UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JOSE CESAR GALLEGO,

            Petitioner,

    -against-

THOMAS DECKER, New York ICE Field Director,
CHAD WOLF, Acting Secretary of Homeland
Security,[1] WILLIAM P. BARR, United States
Attorney General,

          Respondents.

------------------------------------------------------------X

**DECISION AND ORDER**
19 Civ. 8263 (KMK)(PED)

**PAUL E. DAVISON, U.S.M.J.:**

## I.  INTRODUCTION

On December 16, 2019, Petitioner Jose Cesar Gallego ("Gallego") filed his *pro se*

amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking a judgment

declaring his arrest and detention by U.S. Immigration and Customs Enforcement ("ICE")

unlawful, and an order either immediately releasing him from detention or providing him with an

individualized bond hearing before an immigration judge ("IJ"). Dkt. 17.  Gallego named as

Respondents Thomas Decker, New York ICE Field Director; Ken Cuchinelli, then Acting

Secretary of Homeland Security; and William P. Barr, United States Attorney General

("Respondents"). *Id.*

---

[1] Chad Wolf is now the acting Secretary of Homeland Security and is substituted for the former
acting Secretary Ken Cuchinelli as the defendant in this action, pursuant to rule 25(d) of the
Federal Rules of Civil Procedure.

Gallego unlawfully entered the United States on or about October 13, 1988. Dkt. 23 at 1.[2]
On that same day, Gallego was apprehended by U.S. Border Patrol and, on or about December 9,
1988, deportation proceedings were commenced against Gallego in New York, New York. *Id.* at
2.  On February 13, 1989, Gallego's deportation proceedings were administrative closed by an IJ.
*Id.*  In early 1997, Gallego's deportation proceedings were reinstated and he was ordered
deported on or about November 10, 1998. *Id.* at 2-3.  Gallego appealed to the Board of
Immigration Appeals ("BIA") and, on November 13, 2000, the BIA administratively closed
Gallego's deportations proceedings. *Id.* at 3.  On October 12, 2018, ICE arrested Gallego, in
Valhalla, New York, and detained him pending the outcome of his proceedings before the BIA,
which were subsequently reinstated on ICE's motion in or about September 2019. *Id.* at 4.  Also
on October 12, 2018, Gallego alleges that he requested a bond hearing before the immigration
court in New York. Dkt. 17 at 11, 15.  On November 6, 2018, ICE transferred Gallego to the
Etowah County Detention Center in Gadsden, Alabama, where he is currently detained. Dkt. 23
at 4.  Gallego filed his original petition for writ of habeas corpus with this Court on August 30,
2019. Dkt. 1.

Presently before this Court is Respondents' motion to dismiss or to transfer the case to
the Northern District of Alabama. Dkts. 21, 22.  This motion is before me pursuant to an Order
of Reference, dated September 19, 2019. Dkt. 3.[3]  For the reasons set forth below, Respondents'

---

[2] Gallego "rel[ies] on the facts as stated in the . . . Declaration of Supervisor Tonita Dupard
North [Dkt. 23]—with the exception of Mr. Gallego's country of origin and the criminal
history." Dkt. 15 at 3.

[3] A Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) is not required because
"the question of where immigration habeas petitions should be filed is analogous to questions of
venue and personal jurisdiction," and "[a] dismissal or transfer of this case would not preclude
Petitioner from refiling his case or constitute a ruling on the merits." *Cruz v. Decker*, No. 18 Civ.
9948(GBD)(OTW), 2019 WL 6318627, at *4 (S.D.N.Y. Nov. 26, 2019) (citing Fed. R. Civ. P.

motion is **DENIED**.

## II.   ANALYSIS

Respondents contend that pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the

proper respondent in this case is the warden at the Etowah County Detention Center in Alabama,

as the warden is the "immediate custodian" of Petitioner.  Correspondingly, Respondents argue

that because Gallego is challenging his present physical confinement, and he filed the instant

habeas petition after he was transferred to Alabama, the Southern District of New York is not the

proper forum for Petitioner's challenge and, instead, venue is proper only in the Northern District

of Alabama, where Petitioner is currently detained.  On the other hand, construing Gallego's

submissions liberally and as raising the strongest arguments they suggest, *see Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), Gallego essentially argues that the default

rule set out in *Padilla*, discussed *infra*, is not controlling, noting that the Supreme Court chose

not to apply its holding to habeas challenges to immigration detention, and that because the

Alabama facility is a non-federal facility detaining Gallego pursuant to a contract with ICE, the

Respondents are in effect his immediate custodians under *Padilla*. Dkt. 15 at 3-5.

Whether this Court has jurisdiction over Gallego's habeas petition "breaks down into two

related subquestions.  First, who is the proper respondent to [Gallego's] petition?  And second,

does [this Court] have jurisdiction over [the proper respondent]?" *Rumsfeld v. Padilla*, 542 U.S.

426, 434 (2004)).  With respect to the first question, "the federal habeas statute straightforwardly

provides that the proper respondent to a habeas petition is 'the person who has custody over [the

---

41(b)).  "[A]lthough Respondents frame their motion as one for dismissal, the motion does not
address 'the fundamental question of whether a case could proceed in a federal court' and should
thus be treated as nondispositive, like other venue motions." *Id.* (quoting *Williams v. Beemiller,*
*Inc.*, 527 F.3d 259, 266 (2d Cir. 2008)).

petitioner].'" *Id.* (quoting 28 U.S.C. § 2242); *see also* 28 U.S.C. § 2243. The proper custodian is "the person" with "*immediate custody*" of the petitioner and "with the ability to produce the prisoner's body before the habeas court." *Id.* at 435. "[I]n habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* However, in *Padilla*, the Supreme Court expressly left open the question of whether the default "immediate custodian rule" applies to challenges to detention pending deportation. *Id.* at 435 n.8.[4]

In *Padilla*, the petitioner, a U.S. Citizen, was initially detained by federal agents executing a warrant issued by the District Court in this district related to a grand jury investigation into the September 11th terrorist attacks and was held in federal criminal custody in New York. 542 U.S. at 430-31. A month later, the President designated the petitioner an "enemy combatant," and the petitioner was taken into military custody and transferred to the Consolidated Naval Brig in South Carolina. *Id.* at 431-32. The petitioner filed a habeas petition two days later in this district. *Id.* at 432. In light of its holdings, discussed *supra*, the Court rejected the Court of Appeals' determination that Secretary Rumsfeld was the petitioner's custodian under "the legal reality of control" theory and found that the commander of the naval

---

[4] Respondents argue that "footnote eight does not bear at all on (much less detract from) the second aspect of *Padilla*'s analysis—i.e., the district of confinement rule." Dkt. 22 at 19-20. The Supreme Court in Padilla also held that "[t]he plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 443. However, the Court also explained that, in the non-immigration context, there is only one district because "[b]y definition, the immediate custodian and the prisoner reside in the same district." *Id.* at 444. Accordingly, as the question of where the immediate custodian may reside in the immigration context is left open in footnote eight, whether the "general" district of confinement rule applies here has also been left open.

4

brig—"the equivalent of the warden at the military brig"—was the proper respondent as he was the petitioner's immediate custodian exercising day-to-day control over his physical custody and "with the power to produce the body of [the petitioner] before the court or judge." *Id.* at 433, 435-37, 439-40, 442. As discussed above, the Court left open the question presented here— whether, in the immigration context, the proper respondent is the warden of the facility where the petitioner is being held. Notably, this default rule is also subject to various exceptions. *Id.* at 434 ("there is *generally* only one proper respondent to a given prisoner's habeas petition" (emphasis added)); *id.* at 452, 454 (Kennedy, J., concurring) (For example, "[t]he Court has made exceptions in the cases of nonphysical custody, of dual custody, and of removal of the prisoner from the territory of a district after a petition has been filed." (internal citations omitted)).

While in the immigration context "[t]he substantial majority of judges in this District" have "held that in 'core' habeas petitions, where a petitioner challenges his present physical confinement, venue is proper only in the district of confinement," *Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *2 (S.D.N.Y. Sept. 18, 2019) (citing *Almazo v. Decker*, No. 18 Civ. 9941 (PAE), 2018 WL 5919523 (S.D.N.Y. Nov. 13, 2018) (collecting cases)), a growing minority of "courts in this [d]istrict have repeatedly recognized, in cases where a petitioner is detained in a non-federal facility pursuant to the power and authority of the federal government and under a contract with the federal government, the proper respondent is the federal official with the most immediate control over that facility," *Arias v. Decker*, No. 20 Civ. 2802 (AT), 2020 WL 2306565, at *3–4 (S.D.N.Y. May 8, 2020) (quoting *Cruz v. Decker*, No. 18 Civ. 9948, 2019 WL 4038555, at *3 (S.D.N.Y. Aug. 27, 2019) (collecting cases), *aff'd*, No. 18 Civ. 9948, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019)). To date, the Second Circuit has not resolved this question.

In *Cruz*, for instance, Magistrate Judge Wang noted that "[a]lthough *Padilla* applies the 'default rule . . . that the proper respondent is the warden of the facility where the prisoner is being held,' the Supreme Court has expressly left open the question of the proper custodian as it relates to immigration matters," 2019 WL 4038555, at *3 (citing *Padilla*, 542 U.S. at 435-36 & n.8), before concluding, similar to *Arias*, *supra*, that "in cases where a petitioner is detained in a non-federal facility pursuant to 'the power and authority of the federal government' and under a contract with the federal government, the proper respondent is 'the federal official "with the most immediate control" over that facility,'" *id.* (quoting *Rodriguez Sanchez v. Decker*, No. 18 Civ. 8798 (AJN), 2019 WL 3840977, at *2 (S.D.N.Y. Aug. 15, 2019)).

Similar to the instant case, *Cruz* involved a petitioner who, facing removal proceedings in New York, was transferred by ICE to a state penal institution in New Jersey where he was held pursuant to a contract with ICE, and the petitioner filed his habeas petition after he was transferred. *Cruz*, 2019 WL 4038555, at *1, 3. The Court first applied the reasoning in *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998) and concluded that "the named federal respondents are properly named because they exercise control over Petitioner." *Cruz*, 2019 WL 4038555, at *3 (collecting cases).

Respondents argue that the *Cruz* decision, as well as other decisions in this district discussed and cited herein, incorrectly rely on this pre-*Padilla* decision in *Henderson* "which relied on the 'legal control' argument rejected in *Padilla*." Dkt. 22 at 22-26. However, the Supreme Court in *Padilla* explicitly referenced *Henderson* as the only occasion in which the Second Circuit had addressed, at length, the issue of the proper respondent in a case such as this one—as noted above this remains the only occasion on which the Second Circuit has addressed

this issue at length[5]—observing only that the Second Circuit, as did the Supreme Court, ultimately reserved judgement on this question. *Padilla*, 542 U.S. at 435 n.8. In leaving open the question presented here, the Supreme Court also implicitly left open the Court's reasoning in *Henderson* as it concerns the proper custodian in the immigration context.[6]

In its discussion of this issue, the Second Circuit noted that "[h]istorically, the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and, as we will discuss below, on the convenience of the parties and the court." *Henderson*, 157 F.3d at 122. As promised, the Court later discussed the issue of convenience and venue, specifically "the overloading of federal courts in a limited number of jurisdictions and the danger of jurisdiction shopping." *Id.* at 127. In addressing "the powerful arguments on each side" evoked by this "highly complex issue" of "whether the Attorney General is an appropriate respondent in habeas corpus petitions brought by aliens," the Court discussed, *inter alia*, the opposing arguments related to forum shopping and opined that "[t]he government's concerns—though undoubtedly serious ones—may be

---

[5] As Respondents note, the Second Circuit recently suggested that "the key is where [the petitioner] was detained when he filed his habeas petition," Dkt. 22 at 21; however, this suggestion was made "cursorily in a footnote of a summary order without explaining its reasoning," *Cruz v. Decker*, No. 18 Civ. 9948 (GBD)(OTW), 2019 WL 6318627, at *5 (S.D.N.Y. Nov. 26, 2019) (citing *Arevalo-Guasco v. Dubois*, No. 18 Civ. 2184, 2019 WL 4419380, at *1 n.1 (2d Cir. Sept. 17, 2019) (summary order)).

[6] Notably, the *Padilla* Court also referenced *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003) in footnote 8 as a decision in line with the majority of lower courts holding that the Attorney General is not a proper respondent, *Padilla*, 542 U.S. at 435 n.8; however, while the Court in *Roman* held that the *Attorney General* was not the proper respondent, it also held that "although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners" and, thus, that the INS District Director for New Orleans was the petitioner's immediate custodian. *Roman*, 340 F.3d at 320-21 (citing *Henderson*, 157 F.3d at 122).

overstated.  We note that Supreme Court precedent establishes that traditional venue doctrines

are fully applicable in habeas suits and that these, if strictly applied, would do much to prevent

such forum shopping" by petitioners. *Id.* at 124, 127-28; *see Campbell v. Ganter*, 353 F. Supp.

2d 332, 338 (E.D.N.Y. 2004) ("traditional principles of venue apply to habeas petitions to

constrain any such forum shopping"); *see also Padilla*, 542 U.S. at 451-52 (Kennedy, J.,

concurring) (observing that while "habeas petitions are [not] governed by venue rules and venue

considerations that apply to other sorts of civil lawsuits," the analysis of the proper forum for

habeas petitions "is guided by 'traditional venue considerations' and 'traditional principles of

venue'").

     This discussion in *Henderson* is particularly notable as the Supreme Court in *Padilla*

observed that the default rule that a habeas petitioner challenging his present physical

confinement "should name his warden as respondent and file the petition in the district of

confinement," at least in the non-immigration context, "serves the important purpose of

preventing forum shopping by habeas petitioners." *Padilla*, 542 U.S. at 428.  The fact that the

Second Circuit downplays this concern in the immigration context was not addressed in *Padilla*

and is instructive here.  Additionally, it is equally true that the government should also be

dissuaded from forum shopping, and by applying the default rule in *Padilla* to the immigration

context here, particularly considering that ICE unilaterally directs where immigrants are

detained, *see* 8 U.S.C. § 1231(g)(1), "there [would] be almost no check on the government's

ability to forum shop," *Alcaide-Zelaya v. McElroy*, 2000 WL 1616981, at *5 (S.D.N.Y. Oct. 27,

2000); *see also Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 497 (S.D.N.Y. 2009) ("If venue

is proper only in the district in which the petitioner is detained, the Government easily could

evade the laying of proper venue by continuously transferring detainees at its unilateral

discretion."); *Padilla*, 542 U.S. at 463 (Stevens, J., dissenting) ("Venue principles, however, center on the most convenient and efficient forum for resolution of a case, and on the placement most likely to minimize forum shopping by either party." (Internal citation omitted)).

Moreover, the Second Circuit, in *Henderson*, compared the requirement that the proper custodian have "day-to-day control" over the petitioner in the non-immigration context versus the immigration context, opining that "for the great majority of habeas cases, which involve prisoners held in penal institutions, the rule made sense, and still does. The person with immediate control over the prisoner has the literal power to 'produce' the body and is generally located in the same place as the petitioner, thereby simplifying venue problems;" however, in the immigration context, the ICE Director exercises primary custody over petitioners, even when not confined in the ICE Director's district, when "[the petitioners] are seeking to be released from the detainers lodged against them by [ICE]" in that ICE Director's district. *Henderson*, 157 F.3d at 122.[7]

After a brief discussion of its reliance on *Henderson*, the Court in *Cruz* next concluded that "Petitioner here has proffered sufficient evidence to support a finding that ICE is not only his legal custodian, but also his immediate custodian under *Padilla*." *Cruz*, 2019 WL 4038555, at *3. The Court relied in part on the ICE Detainee Handbook and observed that "ICE has the sole authority to move detainees from one state facility to another," that ICE had "a much more involved role than purely legal custody," that the material in the handbook was reviewed by ICE officials, including Thomas Decker, that the Handbook "refers detainees repeatedly to 'ICE

---

[7] As noted, the Second Circuit, "decline[d] . . . to resolve the issue of whether the Attorney General is a proper respondent for habeas actions brought by aliens facing deportation," and "[i]nstead, . . . certif[ied] to the New York Court of Appeals the question of whether the New Orleans INS District Director in [the petitioner's] cases f[ell] within the scope of the New York long-arm statute." *Henderson*, 157 F.3d at 130.

Liaison officers' and 'ICE officers' who are physically present in the detainee housing units for at least a few days per week," and that "ICE exercises control over the detainees' use of the facilities." *Id.* at 4.  The Court ultimately held that "[t]hese additional facts show that ICE retains control of the detainees at [the New Jersey institution] and asserts sufficient 'immediate, physical day-to-day control' over its detainees to find that ICE is Petitioner's immediate custodian under the rule articulated in *Padilla*.  Accordingly, as the Director of the ICE New York Field office which exercises control over Petitioner's detention, . . . Respondent Decker is the proper respondent, and venue is proper in this District." *Id.* at 5.

Judge Daniels affirmed Magistrate Judge Wang's decision in *Cruz. Cruz v. Decker*, No. 18 Civ. 9948 (GBD)(OTW), 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019).  At the outset, Judge Daniels acknowledged that he "ha[d] previously held that jurisdiction over habeas petitions such as the present one lies in the district of confinement;" however, "considering the factual differences squarely presented in the immediate case, this Court finds that Magistrate Judge Wang's Opinion is not clearly erroneous." *Id.* at 4 n.5.  Notably, Judge Daniels added that "this Court would land at the same determination as to the proper respondent in this case even had Magistrate Judge Wang written a Report & Recommendation on the matter and this Court analyzed her decision *de novo*." *Id.* at 6 n.9.

In *Rodriguez Sanchez*, Judge Nathan reached the same conclusion without citing to any specific proffer of evidence supporting ICE's control over petitioner or the out of state facility and relying instead on the petitioner's representations that he was in "a non-federal facility at which he ha[d] been detained only at the direction of and pursuant to a contract with Respondents" and that the non-federal facility was "an intergovernmental service agreement ("IGSA") facility with which ICE contracts to house immigration detainees." *Rodriguez Sanchez*

*v. Decker*, No. 18 Civ. 8798 (AJN), 2019 WL 3840977, at *1 (S.D.N.Y. Aug. 15, 2019). Here, Gallego, acting *pro se*, alleges that "[h]e was transferred to a County Jail that contracts with the DHS to house civil detainees," Dkt. 15 at 4; Respondents do not contest this allegation.

The petitioner in *Rodriguez Sanchez* was similarly placed in immigration proceedings in New York before being transferred to a non-federal facility in New Jersey and subsequently filing his habeas petition in the Southern District of New York. *Id.* The Court also observed that "[c]ontrary to Respondents' contention, *Padilla* does not settle the question of whether or how the immediate custodian rule applies in this case. In *Padilla*, 'the Supreme Court explicitly declined to address the application of the immediate custodian rule to alien detainees." *Id.* at 2 (quoting *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 461 (S.D.N.Y. 2018) and citing *Padilla*, 542 U.S. at 435 n.8). The Court ultimately ruled that the Field Office Director for the New York City Field Office for ICE, Thomas Decker, was the proper respondent as he was "the federal official most directly responsible for overseeing [the] contract facility when seeking a habeas writ." *Id.* (quoting *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1185 (9th Cir. 2018) and citing 8 C.F.R. §§ 236.1(d), 241.4(a) (providing that an initial custody determination, including the setting of a bond, shall be made by the field office director; and granting the field office director the authority "to continue an alien in custody or grant release or parole").

In so holding, the Court reasoned that such a rule is not an adoption of the "legal reality of control" theory disfavored by *Padilla*, but rather "remains faithful to the Supreme Court's dictates in *Padilla* that the immediate custodian is the person 'with the ability to produce the [party's] body before the habeas court,'" *id.* at 3 (quoting *Padilla*, 542 U.S. at 435) (internal citation and quotations omitted), "while at the same time recognizing the reality that non-federal actors 'are poorly situated to defend federal interests' in these situations," *id.* (quoting *Saravia*,

280 F. Supp 3d at 1186); *see also Matias Madera v. Decker*, No. 18 Civ. 7314 (AKH), 2018 WL 10602037, at *4 (S.D.N.Y. Sept. 28, 2018) ("[T]he warden [of the New Jersey county correctional facility] . . . lacks the information needed to adequately respond to Petitioner's claim . . . . To say that the Assistant U.S. Attorney can represent the warden is not an answer; it is the warden who is the real party in interest, not the lawyer chosen to represent him."); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 953 (S.D.N.Y. 2018), *appeal withdrawn sub nom. Villavicencio Calderon v. Sessions*, No. 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018) ("[T]he warden [of the New Jersey county correctional facility] cannot respond to [the] merits of the claims underlying the habeas petition. The warden simply does not have any information to answer for federal authorities, nor does the warden have any reason to litigate these claims here.").

However, in *Sanchez v. Decker*, a recent decision in this Circuit, the Court determined that "[w]hile Respondent Decker may have the power to bring Sanchez's body before the court and/or produce him for a bond hearing, the Court finds that Respondent Decker is nonetheless not Sanchez's 'immediate custodian' under *Padilla*," explaining that "[w]hile it may be the case that, in the immigration habeas context, the Director of ICE's New York City Field Office has more immediate control over the petitioner than the Attorney General or some other remote supervisory official does, that Director nonetheless does not have immediate, 'day-to-day control' over the petitioner's physical custody." *Sanchez v. Decker*, No. 19 Civ. 8354 (RA), 2019 WL 6311955, at *4 (S.D.N.Y. Nov. 25, 2019) (quoting *Padilla*, 542 U.S. at 439). Acknowledging the petitioner's reliance on the fact that he was being held in a non-federal facility under contract with ICE, the Court noted that "numerous courts that have addressed this issue, including this one, have found that the local jail warden is 'quite literally' the petitioner's

immediate physical custodian regardless of the contractual relationship between ICE and its subcontracted facility." *Id.* (collecting cases).

The Court also addressed the ICE Handbook and, in contrast to *Cruz, supra,* determined that it "reinforces the conclusion that ICE retains legal or supervisory, but not immediate, control of [the] detainees at the [New Jersey facility]. For instance, the Handbook clearly states that, pursuant to the contract with ICE, the [New Jersey facility] is obligated to provide detainees 'with food, clothing, and housing' while they are in custody, . . . explains that [the New Jersey facility] is 'responsible for [detainees'] care' and that '[t]he majority of [their] daily contact will be with [the New Jersey facility] officers.' The Handbook further states that the 'operations of this facility are administered by [the New Jersey facility],' which is 'not a branch of Homeland Security, [ICE], or a Federal Government agency.'" *Id.* at 5 (internal quotations and citations omitted). As evidence that the New Jersey facility was "responsible for administering the day-to-day activities within the particular facility," the Court cited to the Performance Based National Detention Standards ("PBNDS"), which states that "[o]rdinarily detainees shall be served three meals every day, at least two of which shall be hot meals; however, the facility administrator may approve variations in the food service schedule during religious and civic holidays," and defines the "'facility administrator' as the 'chief executive officer of a detention facility,' whose formal title may be 'warden.'" *Id.* at 5 n.4. "Moreover, nothing in the PBNDS limits the [New Jersey facility] warden's ability to comply with an order of habeas relief." *Id.* (citing *Lizardo v. Whitaker,* No. 18 Civ. 8467 (VEC), 2018 WL 6444371, at *3 (S.D.N.Y. Dec. 5, 2018) ("If a court ultimately orders the warden of the [New Jersey facility] to show cause for Petitioner's detention; to produce Petitioner for a hearing; to give him a bond hearing or release him; or to release him, period, then the warden must do so—or refuse at his peril.").

Even if it is the case that the warden of the Alabama facility here would be required to produce Gallego for a bond hearing, or potentially release him, pursuant to an order by a federal court, this does not address the concerns laid out by the Court in *Rodriguez Sanchez*, as well as other decisions in this Circuit, discussed *supra*, that the warden is "poorly situated to defend federal interests in these situations," "cannot respond to [the] merits of the claims underlying the habeas petition," and "simply does not have any information to answer for federal authorities, nor does the warden have any reason to litigate these claims here." *Rodriguez Sanchez*, 2019 WL 3840977, at *3.

Even more recently, the Court in *Grant v. Decker* responded to this reasoning in *Sanchez* and distinguished the facts of immigration habeas cases with the facts of *Padilla* noting, "But we are not involved with the commanding officer of a United States Navy brig who is subordinate to federal authority.  Notwithstanding cases in this district that have applied *Padilla* to wardens of state jails, I decline to extend the proper custodian rule to a New Jersey county jail operating under contract with, and subordinate to, the Field Office Director of ICE in New York City." *Grant v. Decker*, No. 20 Civ. 2946 (AKH), 2020 WL 3402445, at *3 (S.D.N.Y. June 19, 2020) (citing *Sanchez*, *supra*).  The Court further reasoned that "[o]fficials at [the New Jersey facility] cannot take action with respect to Petitioner's custody independent of ICE.  They may exercise prison discipline and provide normal medical care and transportation, but subject to Decker's command.  [The New Jersey facility] officials, for example, lack the authority to produce Petitioner's body or to control his physical custody absent specific mandates from ICE.  This holding does not run afoul of the *Padilla* Court's concern that petitioners would forum shop by 'nam[ing] a high-level supervisory official as respondent and then su[ing] that person wherever he is amenable to long-arm jurisdiction.'  Decker is the most immediate federal official

14

responsible for Grant, not a 'remote supervisory official.'" *Id.* at 3 (quoting *Padilla*, 542 U.S. at 435, 447) (internal citation omitted).

I am persuaded by the reasoning in *Grant*, *Cruz*, and *Rodriguez Sanchez*, and similarly conclude that "in cases where a petitioner is detained in a non-federal facility pursuant to the power and authority of the federal government and under a contract with the federal government, the proper respondent is the federal official with the most immediate control over that facility," *Arias*, 2020 WL 2306565, at *3–4 (quoting *Cruz*, 2019 WL 4038555, at *3). Accordingly, I find that Respondent Decker is "the most immediate federal official responsible for [Gallego], not a 'remote supervisory official,'" *Grant*, 2020 WL 3402445, at *3, and that, due to the Alabama facility's contractual relationship with ICE to house ICE's detainees, Respondent Decker has "sufficient 'immediate, physical day-to-day control'" over ICE's detainees and is Gallego's immediate custodian under *Padilla*, *see Cruz*, 2019 WL 4038555, at *5. As other courts have observed, this is not an adoption of the "legal reality of control" theory disfavored by *Padilla*; rather, it acknowledges the factual distinctions between the instant case and *Padilla*; "the Supreme Court's dictates in *Padilla* that the immediate custodian is the person 'with the ability to produce the [party's] body before the habeas court,'" *Rodriguez Sanchez*, 2019 WL 3840977, at *3 (quoting *Padilla*, 542 U.S. at 435) (internal citation and quotations omitted), "while at the same time recognizing the reality that non-federal actors 'are poorly situated to defend federal interests' in these situations," *id.* (quoting *Saravia*, 280 F. Supp 3d at 1186); and is "guided by 'traditional venue considerations' and 'traditional principles of venue,'" *Padilla*, 542 U.S. at 451-52.

As to the traditional principles of venue, Gallego is a "longtime resident of Oss[i]ning, New York" with a wife and three children, all of whom are either lawful permanent residents or

U.S. citizens. Dkts. 15 at 3; 17 at 1.  Gallego's immigration proceedings were initiated in New

York in 1988, and the subsequent reinstatement of his removal proceedings and BIA appeal—

lasting from 1997 to present—have remained in New York and have revolved around incidents

all taking place in New York.  Moreover, Gallego alleges that he requested a bond hearing before

the Immigration Court in New York on the same date he was seized and detained by ICE in

Valhalla, New York: October 12, 2018.[8]  The petitioner's case in *Padilla*, in contrast, had no

direct ties to the Southern District of New York or to officials within the district at the time he

filed his habeas petition. *Padilla*, 542 U.S. at 432 & n.3.  In light of these facts and the

discussion in *Henderson*, *supra*, "[t]his holding does not run afoul of the *Padilla* Court's concern

that petitioners would forum shop by 'nam[ing] a high-level supervisory official as respondent

and then su[ing] that person wherever he is amenable to long-arm jurisdiction.'" *Grant*, 2020

WL 3402445, at *3 (quoting *Padilla*, 542 U.S. at 447).[9], [10]

---

[8] Respondents contend that they have found no records indicating that Gallego requested a bond hearing with the Immigration Court in New York, Dkt. 23 at 5; however, Gallego attached to his amended complaint copies of a Department of Homeland Security Notice of Custody Determination and a request for a bond hearing, both seemingly signed by a supervisory deportation officer with the New York ICE Field Office, dated October 12, 2018. Dkt. 17 at 14-15.

[9] Moreover, "[t]his conclusion is also consonant with the ways in which courts across the country have applied the immediate custodian rule to other forms of contractual detention." *Rodriguez Sanchez*, 2019 WL 3840977, at *3 (citing, *inter alia*, *L.V.M. v. Lloyd*, No. 18 Civ. 1453 (PAC), 2018 U.S. Dist. LEXIS 97939, at *2 (S.D.N.Y. June 8, 2018) (finding that president and CEO of non-profit that contracted with Office of Refugee Resettlement ("ORR") to house unaccompanied immigrant children was not proper respondent) and *Maldonado v. Lloyd*, No. 18 Civ. 3089 (JFK), 2018 WL 2089348 (S.D.N.Y. May 4, 2018), *appeal withdrawn sub nom. Maldonado on behalf of E.H.E. v. Lloyd*, No. 18-2177, 2018 WL 8897922 (2d Cir. Nov. 2, 2018) (granting unaccompanied immigrant child's habeas petition naming federal officials, and *not* anyone from facility at which he was being held pursuant to contract with ORR, as respondents)).

[10] Respondents also appear to argue in the alternative that if the warden of the detention center in Alabama is not Gallego's proper custodian, then the director of ICE's New Orleans Field Office would be the proper custodian and, additionally, that "[t]o request a bond hearing with the

Accordingly, as Respondent Decker is the proper respondent in this case, and this Court has jurisdiction over Respondent Decker, the Court has jurisdiction over Gallego's habeas petition. *See Rumsfeld v. Padilla*, 542 U.S. at 434.

## III.   CONCLUSION

For the reasons set forth above, Respondents' motion to dismiss or transfer the case to the Northern District of Alabama is **DENIED**. Respondents shall file an answer to the amended petition within 30 days of this Order.[11]

The Clerk of the Court is respectfully requested to terminate the pending motion (Dkt. 21).

Dated:  September 8, 2020
        White Plains, New York

                                        SO ORDERED

                                        _____
                                        Paul E. Davison, U.S.M.J.

---

Immigration Court, Gallego should file a motion for a bond hearing before the Immigration Court in Oakdale, Louisiana." Dkt. 22 at 8, 11 n.3 (citing 8 C.F.R. § 1003.19(c)(1)). However, Respondents cite no authority for their contention that ICE's New Orleans' office would now have legal control of Gallego's detention or habeas petition, and 8 C.F.R. §§ 1003.19(c)(1) and (2) provide that Gallego has the option to either file his motion for a bond hearing with the Immigration Court having jurisdiction over the place of detention *or* with the Immigration Court having administrative control over the case. In any event, evidence produced by Gallego in his amended petition supports his contention that he has already filed a request for a bond hearing in New York. And, as discussed above, all of the immigration proceedings here have taken place in New York, and there is no indication in the record that the immigration court in New York no longer has administrative control over Gallego's case.

[11] Copies of all unpublished cases available only in electronic form cited herein have been mailed to Petitioner. *See Lebron v. Sanders*, 557 F.3d 76, 78 (2d Cir. 2009).

A copy of this Decision & Order has been mailed to Petitioner, *pro se*:

Jose Cesar Gallego
A# 029-253-235
Etowah County Detention Center
827 Forrest Ave.
Gadsden, AL 35901